<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

|  |  |
|---|---|
| REYNALDO RAMIREZ, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-1042 (JAG) |
| UNITED PARCEL SERVICE, INC., | : **OPINION** |
| Defendant. | : |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion by defendant United Parcel Service, Inc. ("Defendant" or "United Parcel Service") seeking the grant of summary judgment, pursuant to FED. R. CIV. P. 56(c), against Plaintiff, Reynaldo Ramirez. For the reasons set forth below, this motion shall be granted, in part, and denied in part.

**I.  <u>BACKGROUND</u>**

Plaintiff is an Hispanic male of Puerto Rican and black ancestry. (Plaintiff's R. 56.1 Statement at ¶ 2.) Plaintiff was in the United States Marine Corps in the 1980s. (<u>Id.</u> at ¶ 4.) Plaintiff obtained a Bachelor's degree in Criminal Justice in 2000. (<u>Id.</u> at ¶ 3.) Plaintiff is a Sergeant in the Essex County Sheriff's Department (<u>Id.</u> at ¶ 5.)

Defendant hired Plaintiff in December 1988. (Def. R. 56.1 Statement at ¶ 2.) In November 1989, Defendant promoted Plaintiff to a Part-Time Supervisor Position. (<u>Id.</u> at ¶ 3.) Defendant promoted Plaintiff to a full-time position in 1994. (<u>Id.</u> at ¶ 4.)

Several supervisors allegedly advised Plaintiff that Defendant gave employees annual salary increases of between 3% and 6%, "depending on" the employee's performance evaluation. (Id. at ¶ 5.) Plaintiff admits that he was not guaranteed a minimum raise of 3% nor were there any documents from Defendant guaranteeing employees a raise. (Id. at ¶ 6.) Plaintiff agrees that annual salary increases were dependent upon the particular employee's performance evaluation, and how much that employee was being paid in relation to the pre-determined salary range for each job. (Id. at ¶ 7.) Each year, Defendant issued "Salary Administration Guidelines" to determine employee raises, which set forth how management should determine salary increases each year. (Id. at ¶ 8.) Plaintiff admits that he never saw these guidelines. (Id.) Defendant gave Plaintiff 14 raises that exceeded 3%, and six raises that exceeded 6%. (Id. at ¶ 9.)

During the 1990s, Plaintiff alleges that he was "promised" a promotion to a Full-Time Supervisor position, but that those promises were not fulfilled. (Id. at ¶ 10.) Plaintiff alleges that in early 2004, Robert Agazzi, Defendant's Health and Safety Manager, approached him about a potential promotion to a supervisory position as "Hazardous Materials Compliance Supervisor." (Id. at ¶ 12.) During discussions between Plaintiff and Agazzi, Plaintiff told Agazzi that he "refused to take another job at this company without being promoted first." (Id. at 13.) Plaintiff claims that the following day Agazzi contacted him and told him that they really want him and asked him to consider the "Full-Time Compliance Supervisor position." (Id. at 14.) Plaintiff told Agazzi that he would not accept the job until he was guaranteed the $5,000 monthly salary "in writing." (Id. at 15.) Plaintiff agrees that Agazzi did not have approval to offer him a salary of $5,000 per month. (Id. at ¶ 16.)

Defendant's promotional process includes, and is contingent upon, an interview and

approval by a panel of several other management employees. (Id. at ¶ 17.) Several days after his discussion with Agazzi, Plaintiff appeared before such a panel in connection with the position. (Id. at ¶ 18.) Plaintiff was informed that the starting salary for the position would be between $4600.00-$4700.00 per month. (Id. at ¶ 21.) Plaintiff refused to accept the job he was offered unless Defendant agreed to pay him a minimum salary of $5,000 per month. (Id. at ¶ 22.)

Plaintiff was informed that Defendant decided to transfer an existing Full-Time Supervisor, Joseph Caruso, into the Full-Time Compliance Supervisor job rather than promote anyone. (Id. at ¶ 24.) Plaintiff was told that one of the reasons for the decision not to promote him was that Plaintiff was trying to dictate his salary before even accepting the position. (Id. at ¶ 25.) Plaintiff is an at-will employee. (Id. at ¶ 37.) As such, Defendant could change the terms and conditions of his employment at any time for any reason. (Id.)

Plaintiff does not have a medical condition that affects his employment. (Id. at ¶ 40.) Plaintiff's weight has not restricted his ability to function normally or perform his job with Defendant. (Id.) No doctor has ever told Plaintiff that he suffers from any medical or mental condition that was caused by, or is related to, his weight. (Id.) Plaintiff's "lazy eye" condition does not affect or impair any activities of Plaintiff or his ability to work. (Id. at ¶ 43.)

In mid-June 2004, due to an administrative error, Defendant incorrectly re-classified Plaintiff as a part-time employee eligible for overtime under Defendant's compensation policies. (Id. at ¶ 28.) Defendant inadvertently paid Plaintiff overtime pay from June 2004 to March 2005. (Id. at ¶ 29.) Defendant discovered its payroll error on February 1, 2005. (Id. at ¶ 30.) Shortly thereafter, Plaintiff was informed that he owed Defendant $13,431.73, and that Defendant demanded that this money be repaid. (Id. at ¶ 31.) On March 8, 2005 Plaintiff was informed that

Defendant would deduct $895.45 from his paycheck as repayment to the company of the overpayment. (Id. at ¶ 32.) Later in March 2005, before Defendant commenced these deductions, Plaintiff began a disability leave of absence due to suffering a nervous breakdown. (Def. R. 56.1 Statement at ¶ 33, Plaintiff's R. 56. 1 Statement at ¶ 16.) Defendant administratively terminated Plaintiff on March 3, 2006. (Plaintiff's R. 56.1 Statement at ¶ 16.)

Plaintiff filed a Complaint in the Superior Court of New Jersey on January 17, 2006 alleging various violations of the New Jersey Law Against Discrimination ("NJLAD").[1] Plaintiff alleges that he was subjected to racial slurs and vicious taunts directed at him and made in his presence and in the presence of other employees. Indeed some of these comments were directed at other minority employees as well. Plaintiff alleges that Defendant was negligent in failing to restrain its employees from engaging in discriminatory conduct, failed to promote him, refused to grant him pay raises owed, and subjected him to a hostile work environment.

Counts I and II of Plaintiff's Complaint allege hostile work environment claims under the NJLAD. In Count III, Plaintiff alleges negligence against Defendant for permitting a hostile work environment. Count IV of Plaintiff's complaint is a claim for loss of consortium, brought by Plaintiff's wife. In Count V Plaintiff claims that Defendant refused to provide Plaintiff with pay raises owed to him. In Count VI, Plaintiff claims that Defendant failed to promote him. In Count VII, Plaintiff claims that Defendant violated the NJLAD when Defendant's employees

---

[1] Plaintiff initially filed the Complaint jointly with his wife, Marybel Ramirez. The Complaint was removed to federal district court. In Count IV of the Complaint, Plaintiff's wife claimed loss of consortium, companionship, and society of her husband. By order of this Court, dated November 20, 2006, and by stipulation by and between the parties, all claims of Plaintiff, Marybel Ramirez against defendant United Parcel Service were dismissed in their entirety, with prejudice.

made comments about Plaintiff's physical characteristics, infirmities, and appearance, including Plaintiff's weight.[2]

Defendant filed a counterclaim. Count I is a claim for conversion based on alleged salary overpayments made to Plaintiff, while he was an employee of United Parcel Service. Count II is a claim for unjust enrichment based on the alleged overpayments to Plaintiff.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a

---

[2] Plaintiff raises no genuine issues as to any material fact in opposition to Defendant's motion for summary judgment as to Count VII. Defendant's motion for summary judgment is granted as to Count VII.

5

directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original)  (internal citations omitted).) Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented."  Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006).

### III.  ANALYSIS

#### A.    Plaintiff's Pay Raises Claim

Plaintiff alleges in his Complaint that Defendant denied him pay raises that he was owed. "At the time Plaintiff Reynaldo Ramirez began employment with the defendant, United Parcel

6

Service, and at various times thereafter, defendant represented to plaintiff that he would receive pay raises. Despite the passage of time and plaintiff requesting the pay raises owed, the defendant, United Parcel Service, through its agents and employees, would refuse to provide plaintiff with the pay raises owed." (Complaint, Count V, ¶¶ 2, 3.)

Plaintiff concedes that he has received numerous pay raises throughout his tenure with United Parcel Service. Plaintiff admits that he was not guaranteed a minimum raise of 3% nor were there any documents from Defendant that guaranteed employees a raise. (Def. R. 56.1 Statement at ¶ 6.) Defendant gave Plaintiff 14 raises that exceeded 3%, and six raises that exceeded 6%. (Id. at ¶ 9.)

Plaintiff does not contest these facts and fails to raise any genuine issues as to any material facts. Plaintiff makes no legal argument in opposition to this claim. As a result, this Court grants Defendant's motion for summary judgment on the Fifth Count of Plaintiff's complaint.

### B.   Plaintiff's Failure to Promote Claims

Plaintiff alleges in Count VI of the Complaint that Defendant refused to promote him. "Despite the passage of time and plaintiffs requesting promotions owed, the defendant, United Parcel Service, through its agents and employees, would refuse to promote plaintiff." (Compl., Count VI, ¶ 3.)[3] Plaintiff cites two specific instances in his brief in which the Defendant failed to promote him. One of the claims is based upon events that occurred in 2001 and the other is predicated on events revolving around a 2004 promotion denied to Plaintiff. (Plaintiff's Br. at 1-

---

[3] Plaintiff does not cite to any federal statute to support this claim. Under New Jersey law, failure to promote claims, in the context of employment discrimination cases are most likely to fall under the NJLAD.

2.)

Plaintiff alleges that he was denied a promotion in 2001 in violation of the NJLAD. Plaintiff states that he was a candidate for promotion in 2001. He successfully completed the Panel Board and was placed in the pool of candidates. His scores were exceptional, and he was recommended for promotion. At this time, a position became available in Health & Safety. Part of this job was to investigate accidents with UPS vehicles, conducting interviews, documenting facts and writing reports. This was a specialty area for Plaintiff, since he was then, as he is now, an Essex County Deputy Sheriff's Officer. Plaintiff's responsibilities as a Sheriff's Officer, is, in part, to investigate accidents, take statements and make reports. He has had years of experience with accident investigation. Plaintiff was denied this promotion. Plaintiff alleges that Joseph Caruso, a much less qualified Caucasian, was promoted into this full-time supervisor position in the management ranks, while the Plaintiff–a more qualified and more senior minority was denied the position. (Plaintiff's Br. at 1-2.)

Plaintiff's 2001 failure to promote claim is barred under the statute of limitations of the NJLAD. See Shepherd v. Hunterdon Developmental Center, 174 N.J. 1, 19 (N.J. 2002): "The statute of limitations for claims arising under the LAD is two years . . . In analyzing the limitations question, the Court differentiated between "discrete" discriminatory acts and hostile work environment claims. The Court explained that some discrete acts, such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify . . . The Court further indicated that a "discrete retaliatory or discriminatory act occur[s] on the day that it happen[s]"

Plaintiff cannot recover on his failure to promote claim from 2001 because more than two years has elapsed since his cause of action first arose.

8

Plaintiff also alleges that Defendant discriminated against him by failing to promote him in 2004. Plaintiff claims that he was passed over in favor Joseph Caruso for the position of Hazardous Materials Compliance Supervisor. (Plaintiff's R. 56.1. Statement at ¶¶ 51-52.)

Section 10:5-12 of the NJLAD provides: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . .[f]or an employer, because of the race, creed, color, national origin . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Courts reviewing failure to promote clams under the NJLAD use the three-part test established by the Supreme Court of the United States in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 549 (N.J. 1990): "A prima facie case of unlawful discrimination is established when: [t]he plaintiff [ ] demonstrate[s] by a preponderance of the evidence that he or she (1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications. Once an employee establishes a prima facie case, the employer must articulate some legitimate, non-discriminatory reason for the employee's rejection. After the employer has satisfied that burden, the employee must demonstrate that the legitimate non-discriminatory reason articulated ... was not the true reason for the employment decision, but was merely a pretext for discrimination. The employee carries the ultimate burden of proving that the employer engaged in intentional discrimination." Id.

Applying the McDonnell Douglas standard, this Court finds that Plaintiff has established a prima facie case. Plaintiff has established a prima facie case because (1) he is Hispanic and of

black ancestry, which is a protected class; (2) Plaintiff applied for and was highly qualified for the position he sought (Plaintiff was referred to as "absolutely the most qualified person for the job" (Agazzi Dep. ¶ 53:1-24)); (3) Plaintiff was rejected and was not promoted despite his qualifications; and (4) the position was left open and later filled by a less qualified Caucasian male.

Ramirez was the District Hazardous Materials Coordinator for the entire district. (Plaintiff's Sur-Reply at 3.) Joseph Caruso was not an instructor regarding hazardous materials building compliance, and he never held the title HazMat or Hazardous Materials Coordinator. (Id.) Caruso never ran a Damage Materials Program and did not establish a Damage Materials program at the Newark, Gould Avenue, or Saddle Brook locations. By contrast, Plaintiff had all of these experiences. (Id.)

Having established a prima facie case, the burden shifts to Defendant to proffer a legitimate non-discriminatory reason for denying Plaintiff a promotion. Erickson, 117 N.J. at 549. Defendant argues that Plaintiff was denied the promotion because he requested a salary above the Salary Guidelines for the position. "All parties agree that Mr. Louhisdon was in the process of offering plaintiff a promotion until plaintiff made his salary request that exceeded the limits in UPS' policies, and that that request derailed his promotion" (Def. Reply Br. at 9, Def. R. 56.1 Statement at ¶ 25.)

In order to demonstrate that Defendant's stated reason is pretext, Plaintiff states that he was told by Aggazi that the position warranted a $5000.00 [a month] salary. (Plaintiff's R. 56.1 Statement at ¶ 32.) Aggazi testified in his deposition that Plaintiff would have been a full-time supervisor in the package operations area, if he had received the promotion at issue. (Plaintiff's

Sur-Reply, Exhibit F.) Defendant's own 2004 Salary Administration Guidelines stipulate that in 2004, the starting salaries for Operations Supervisors, including those in package operations ranged between $4,975 and $5,375.

This information casts serious doubt on Defendant's stated legitimate non-discriminatory reason for denying Plaintiff a promotion. See Murray v. Newark Housing Authority, 311 N.J. Super. 163, 173 (Law Div. 1998) (citations omitted). "The applicable evidential standards, presumptions, and burdens of production and proof that apply thereafter have been set forth by the Supreme Court's decisions in Burdine, as modified by St. Mary's Honor Center v. Hicks. As those cases establish, in order to rebut the presumption of discrimination raised by plaintiff's prima facie case, the employer must come forward with evidence of a legitimate, nondiscriminatory reason for the layoff. If the employer provides such evidence, the presumption of discrimination disappears. The burden of production then shifts back to the employee to show that the stated reason is a mere pretext. He may do so either by persuading the court directly "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

In this case, Plaintiff has offered evidence which suggests that Defendant's proffered explanation for failing to promote Plaintiff is unworthy of credence. This Court finds that there are genuine issues as to material facts regarding whether Defendant failed to promote plaintiff based upon discriminatory reasons. Consequently, Defendant's motion for summary judgment as to Count VI of Plaintiff's Complaint is denied.

### C. **Plaintiff's Hostile Work Environment Claim**

In counts I and II of the Complaint, Plaintiff alleges a hostile work environment claim

under the NJLAD based on a litany of comments and incidents that occurred throughout his 18 year tenure with Defendant. Plaintiff alleges that these incidents constitute a hostile work environment based on his Hispanic national origin. Defendant argues that these claims are time barred because Defendant did not allege any discriminatory comments during 2004.

Plaintiff cites National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002) for the exception to the statute of limitations known as the continuing violations doctrine. "In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." See also Shepherd,174 N.J. at 20 (applying continuing violations doctrine to NJLAD hostile work environment claims). "A hostile work environment claim is comprised of a series of separate acts that connectively constitute one 'unlawful employment practice' . . . it does not matter, for purposes of the Statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a Court for the purposes of determining liability." Id.

Plaintiff has offered facts of alleged discrimination that occurred after January 17, 2004, which place Plaintiff's hostile work environment claim within the NJLAD two year statute of limitations. Plaintiff's amended interrogatory answer no. 1 contains multiple complaints of racial discrimination that were made to UPS during 2004 and 2005. (Ramirez Cert. ¶ 4.)

This Court finds that there is a genuine issue as to a material fact as to whether Plaintiff faced discriminatory acts contributing to a hostile work environment during 2004 and 2005. Defendant's motion for summary judgment as to Count I and II of Plaintiff's Complaint is

denied.[4]

### D.  Plaintiff's Negligence Claim

Count III of Plaintiff's Complaint is confusing to say the least. Plaintiff uses the language of both Negligence and Hostile Work Environment in attempting to state a cause of action. As an elementary matter of pleading, each cause of action should only state one claim. The facts alleged in Count III sound in a hostile work environment and do not sound in negligence. To the extent that Plaintiff is attempting to state a claim for negligence, he avers that Defendant has allowed its employees and others to use derogatory language, including racial epithets, toward him. There is no claim or theory of liability cognizable under the NJLAD or common law tort which would permit this to go forward as a negligence claim. To the extent that this claim as enunciated in Count III amounts to a hostile work environment claim, it is duplicative of Counts I and II, however, as noted in footnote 4, supra–if redundancy exists in pleading, it may be addressed at a later time. On the other hand, Plaintiff fails to specify any discriminatory acts and does not assert that these discriminatory acts occurred after January 2004. As such Defendant's motion for summary judgment as to Count III of the Complaint is granted.

### E.  Defendant's Conversion and Unjust Enrichment Claims

In addition to seeking summary judgment as to Plaintiff's Complaint, Defendant is also seeking summary judgment as to the two claims set forth in its counterclaim. In Count I of Defendant's counterclaim, Defendant sets forth a cause of action for conversion. Count II of Defendant's counterclaim sets forth a cause of action for unjust enrichment.

---

[4] Although both Counts I and II appear to assert claims for hostile work environment, the question of whether there is any redundancy in the Counts need not be resolved at this juncture.

"The general rule is that one who exercises unauthorized acts of dominion over the property of another, in exclusion or denial of his rights or inconsistent therewith, is guilty of conversion although he acted in good faith and in ignorance of the rights or title of the owner. The state of his knowledge with respect to the rights of such owner is of no importance, and cannot in any respect affect the case." See McGlynn v. Schultz, 90 N.J. Super. 505, 526 (N.J. Super. Ct. Ch. Div. 1966) (citing 89 C.J.S. Trover and Conversion § 7 at 536-37), aff'd, McGlynn v. Schultz, 95 N.J. Super. 412 (N.J. Super. Ct. App. Div. 1967), cert. den. 50 N.J. 409 (N.J. 1967).

Defendant asserts that from the period of mid-June, 2004 to March, 2005, Defendant incorrectly re-classified Plaintiff as a part-time employee eligible for overtime under Defendant's compensation policies. As a result, Plaintiff was overpaid in the amount of $13,431.73. (Def. R. 56.1 Statement at ¶¶ 29, 31.) Defendant informed Plaintiff of this error in March of 2005 and asked him to repay the monies that he had received in error. Plaintiff has not repaid any money that Defendant claims it is owed.

A factual dispute exists as to whether Plaintiff was re-classified as part-time, and when this allegedly occurred. Plaintiff cites UPS payroll records, which contradict Defendant's statement that Plaintiff was inadvertently classified as part-time. (Plaintiff's Sur Reply at 1.) Plaintiff asserts that he was classified as full-time. "Clearly, defendant's own documents show many factual discrepancies regarding Plaintiff's proper classification as "full time" or "part-time" (Id.) In addition, Defendant's records also show that Plaintiff was classified as part-time as early as February 2004, which is before the date Defendant states it reclassified Plaintiff as a part-time employee. (Id. at 1-2.)

Plaintiff also points to documents provided by Defendants which demonstrate that he was

14

classified as a full-time employee in February and March of 2005. (Id.) Plaintiff's status as a full-time or part-time employee determines the level of compensation to which he is entitled. (Id.) Since there is a factual dispute as to when and at what status Plaintiff was classified, this Court cannot determine whether Plaintiff converted Defendant's money. Consequently, Defendant's motion for summary judgment on its counterclaim for conversion is denied.

In an unjust enrichment claim, the moving party must prove: (1) the adverse party received a benefit, and (2) retention of that benefit would be unjust. See Caputo v. Nice-Pak Products, Inc., 300 N.J. Super. 498, 507 (App. Div. 1997). The moving party must show that "it expected remuneration at the time it performed or conferred a benefit on Defendant, and that the failure of remuneration enriched defendant beyond its contractual rights." Id. (citing VRG v. GKN Realty Corp., 135 N.J. 539, 554 (N.J. 1994)).

Since a genuine issue of material fact exists as to whether Plaintiff was improperly classified as a part-time employee, this Court cannot determine whether Plaintiff received any undeserved payments. Defendant's motion for summary judgment on its counterclaim for unjust enrichment is denied.

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment shall be granted, in part, and denied, in part.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: December 30, 2008