NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

REYNALDO RAMIREZ,                   )        Hon. Garrett E. Brown, Jr.
                                    )
            Plaintiff,              )        Civil Action No. 06-1042
                                    )
        v.                          )        **MEMORANDUM OPINION**
                                    )
UNITED PARCEL SERVICE,              )
                                    )
            Defendant.              )
_____)

Michael A. Mark, Esq.
LAW OFFICE OF MICHAEL A. MARK
459 LaFayette Avenue
Hawthorne, NJ 07506
*Attorneys for Plaintiff*

Michael T. Bissinger, Esq.
DAY PITNEY, LLP
P.O. Box 1945
Morristown, NJ 07962-1945
*Attorneys for Defendant*

**BROWN, Chief Judge:**

Before the Court is the motion *in limine* (Doc. No. 59) filed by Defendant United Parcel

Service (UPS) seeking (1) the exclusion of evidence relating to Plaintiff's previously dismissed

claims; (2) the exclusion of evidence regarding racial slurs directed at persons of different races

and ethnicities as irrelevant and unduly prejudicial; (3) the exclusion, on the bases of the

continuing violation doctrine, laches, and Federal Rule of Evidence 403, of evidence regarding

some or all of the alleged racial comments directed at Plaintiff between the 1980s and 2005; (4)

1

the exclusion of Dr. Moti Peleg's testimony as impermissible "net opinion" pursuant to Federal Rule of Evidence 702; (5) the exclusion of certain audiotapes produced by Plaintiff, which UPS claims are inaudible; (6) the exclusion of evidence arising from privileged conversations between Plaintiff's counsel and UPS employee Godfrey Payne, who had been a prospective client; and (7) the exclusion of certain hearsay statements.  For the following reasons, the Court will grant UPS's motion in part, deny it in part, and defer judgment in part.  The Court addresses each request and the parties' respective arguments in turn.

  *1. Plaintiff's Previously Dismissed Claims*

  First, UPS seeks to exclude evidence relating to Plaintiff's previously dismissed claims, specifically Plaintiff's claims of discriminatory pay raises during his employment with UPS, harassment on the basis of disability (Plaintiff's weight and "lazy eye" condition), and a wrongful denial of promotion occurring in 2001.   These claims were addressed in Judge Greenaway's September 2, 2009 Opinion and Order, which granted summary judgment in favor of UPS on each of these claims.  The Court notes that Judge Greenaway's reasoning for granting summary judgment differed with regard to the 2001 failure-to-promote action.  Whereas Judge Greenaway denied Plaintiff's discriminatory pay raises and disability-based harassment claims on the merits, finding that Plaintiff had presented no evidence establishing a genuine issue of material fact on these claims,  Judge Greenaway ruled that the 2001 failure-to-promote action was barred by the two-year statute of limitations applicable to claims arising under the New Jersey Law Against Discrimination (NJLAD).

  UPS argues that evidence relating to each of these dismissed claims would be irrelevant to Plaintiff's remaining hostile work environment and 2004 failure-to-promote claims, which

allege discrimination on the basis of Plaintiff's race.  Specifically, UPS contends that Plaintiff's failure to adduce evidence supporting the discriminatory pay raises and disability-based harassment claims, which resulted in Judge Greenaway granting summary judgment on these claims, precludes him from attempting to do so now to support his remaining claims. Furthermore, UPS contends that Plaintiff has put forth no evidence suggesting that the supervisor who allegedly denied his promotion in 2004 had anything to do with the 2001 promotion.  In response, Plaintiff argues that the employment discrimination doctrine adopted by the United States Supreme Court in *Morgan* and the New Jersey Supreme Court in *Roa* permits this evidence to be admitted as "background evidence" supporting his remaining timely claims.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Roa v. Roa*, 200 N.J. 555, 576 (2010).  Under *Morgan* and *Roa*, Plaintiff argues that this evidence is admissible under Federal Rule of Evidence 404(b), which allows "[e]vidence of other crimes, wrongs or acts" to be used as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or [the] absence of mistake or accident."

While Plaintiff's reading of *Morgan* and *Roa* appears to be correct—that evidence of time-barred claims may be introduced as background evidence for timely claims—the Court does not see how evidence related to Plaintiff's dismissed claims would be relevant to his remaining claims.  With regard to the discriminatory pay raises and disability-based harassment claims, these claims were not found to be time-barred, and hence Plaintiff's *Morgan*/*Roa* argument is misplaced.  Judge Greenaway found these claims substantively unfounded, on the merits, when he granted summary judgment against Plaintiff on these counts.  Judge Greenaway found that Plaintiff had not put forth evidence establishing a genuine issue of fact regarding these claims.

Memorandum Opinion of December 30, 2008, at 5 n.2, 7.  Indeed, Judge Greenaway noted that Plaintiff admitted he was not guaranteed a minimum raise, but nevertheless conceded that he had received numerous raises during his time with UPS.  *Id.* at 7.  The Third Circuit in *Narin v. Lower Marion School District*, in the context of an age discrimination claim under the ADEA, affirmed a district court's exclusion of evidence of pretext where the plaintiff had produced no such evidence.  206 F.3d 323, 334 (3d Cir. 2000).  The record in this case demonstrates that Plaintiff has not produced cognizable evidence of discriminatory pay raises or disability-based harassment, and that his claims based on these allegations have been summarily denied.  The Court agrees with UPS that it would now be improper to allow Plaintiff to introduce evidence, testimonial or otherwise, regarding the previously dismissed discriminatory pay raises and disability-based harassment claims.  Accordingly, the Court will not allow Plaintiff to introduce evidence of discriminatory pay raises or disability-based harassment.

The Court also agrees with UPS that it would be improper to allow Plaintiff to introduce evidence, testimonial or otherwise, regarding his previously dismissed 2001 failure-to-promote claim, but for different reasons.  Although Judge Greenaway determined that this claim was time-barred, such that *Morgan* and *Roa* would permit this evidence, if otherwise relevant, to come in under Federal Rule 404(b) as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or [the] absence of mistake or accident," Plaintiff has not demonstrated how evidence relating to the 2001 denial of promotion is relevant to his timely 2004 failure-to-promote claim.  Plaintiff does not suggest that Metro Jersey District Human Resources Manager Rudy Louhisdon, the UPS official he claims made the decision regarding the 2004 promotion, had anything to do with Plaintiff's 2001 non-promotion.  Indeed, it appears that Mr. Louhisdon did not work in the

4

same UPS district in 2001.  Conversely, Plaintiff has not presented any evidence, nor has he alleged, that UPS employees connected with the 2001 non-promotion had any influence on Mr. Louhisdon's decision not to promote Plaintiff in 2004.  The Third Circuit recognized in *Narin* that a plaintiff may not impute a hiring authority's improper motives for a discrete personnel action to other personnel actions where that official played no part in the decisionmaking process.  206 F.3d at 335.  Under the *Narin* court's reasoning, the opposite proposition— imputing a prior hiring authority's improper motives upon a later hiring authority that played no part in the prior personnel decision—is likewise flawed.  Absent some causal nexus between the 2001 non-promotion and the 2004 non-promotion, the Court does not see how evidence concerning the former is relevant to the latter.  Accordingly, the Court will not permit Plaintiff to introduce evidence, testimonial or otherwise, regarding the 2001 non-promotion.

### 2.  Evidence of Racial Slurs About Other Races and Ethnicities

UPS next argues that Plaintiff should not be allowed to introduce evidence of discriminatory comments about persons of other races and ethnicities.  Specifically, UPS seeks to limit Plaintiff's hostile work environment claim to derogatory comments and slurs targeting Hispanic persons, because Plaintiff described himself as Hispanic during his deposition.  Plaintiff responds that he is both Hispanic and African-American, and that because of this background, derogatory comments and slurs about both Hispanic and African-American persons are admissible to establish his hostile work environment claim.

Under New Jersey law, one of the threshold requirements for an NJLAD hostile work environment claim is that the complained-of conduct would not have occurred *but for* the employee's membership in a protected class.  *See, e.g.*, *Lehmann v. Toys 'R Us, Inc.*, 132 N.J.

587, 603 (1993).  In the context of the hostile work environment claim in this case, Plaintiff must prove that the harassment he alleges would not have occurred but for his race.  Generally speaking, evidence of one type of discrimination, such as gender discrimination, may not be used to prove another type of discrimination, such as race-based discrimination, because evidence of other types of discrimination offers minimal probative value, but has the potential to substantially prejudice the jury against a particular party.  *See, e.g.*, *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357–360 (5th Cir. 1995) (holding comments pertaining to race, sex, and national origin were properly excluded pursuant to Federal Rules of Evidence 401 and 403 in a case involving disability discrimination); *Rauh v. Koyne*, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (excluding evidence of racial discrimination in a case involving employment discrimination on the basis of gender and marital status).

Here, UPS correctly notes that Plaintiff, during his deposition, referred to himself as "Full Hispanic."  (Mark Certif., Ex. F ("Ramirez Deposition") at 22:14.)  Yet, Plaintiff qualified this statement by noting that he had "black Hispanic" ancestors (*Id.* at 22:14–25, 377:10), and Plaintiff also described an exchange he had with a co-worker in 1996 where he told the co-worker that a particular joke targeting African-Americans was offensive because he had black ancestry (*Id.* 376:19–25).  Plaintiff's testimony, thus, reveals that Plaintiff considers himself to also be black.  Furthermore, Judge Greenaway's summary judgment opinion, in assessing the merits of Plaintiff's 2004 non-promotion claim, recognized that Plaintiff "is Hispanic and of black ancestry."  Memorandum Opinion of December 30, 2008 at 9.  This Court sees no reason, based on Plaintiff's testimony, to depart from Judge Greenaway's understanding and determine as a matter of law that Plaintiff cannot introduce evidence concerning derogatory

comments and slurs about African-Americans to support his hostile work environment claim. Accordingly, the Court will permit Plaintiff to introduce evidence of derogatory comments and slurs about African-Americans made to him and in his presence to support his hostile work environment claim.

UPS also suggests that Plaintiff intends to present evidence of derogatory remarks and slurs about persons of other races and national origins, as well as sexist remarks made to some female colleagues.  It is unclear which of these statements, if any, Plaintiff intends to use to support his hostile work environment claim.  The comments identified by UPS appear to have occurred in 2003 (sexist remarks) and the 1990s (other racial slurs allegedly made by Manager Paul Hippel).  The Court will address the admissibility of evidence about these comments in its discussion of laches, but notes that evidence of gender discrimination and/or discrimination against persons of different races or national origin than Plaintiff will not be admissible.  There must be a causal nexus between the discriminatory conduct and Plaintiff's Hispanic and black racial background.

> 3.  *Continuing Violation, Laches, and FRE 403—Evidence Regarding the Alleged Racial Comments (1980s–2006)*

Before the Court addresses UPS's laches defense, the Court notes that UPS renews its argument, raised on summary judgment and on motion for reconsideration before Judge Greenaway, that Plaintiff's hostile work environment claim is time-barred.  Under the NJLAD's two-year statute of limitations, the applicable limitations period in this case extends from the last alleged discriminatory act in 2004 until the same date in 2006.  In order to raise allegations of conduct predating the limitations period to support his hostile work environment claim, Plaintiff

relies on the continuing violation doctrine, which requires that at least one of the discriminatory acts occurred during the limitations period.  UPS argues that Plaintiff's admission, during his deposition, that he was aware of no anti-Hispanic comments during the limitations period precludes application of the continuing violation doctrine and bars Plaintiff's hostile work environment claim.  However, Judge Greenaway twice ruled against UPS on this issue, finding that Plaintiff had presented evidence in his amended answers to interrogatories establishing a genuine issue of fact concerning whether he was exposed to racially insensitive comments about Hispanics or African-Americans in 2004.  Thus, to the extent that UPS argues that Plaintiff's hostile work environment claim is barred by the statute of limitations, this Court sees no reason to depart from Judge Greenaway's ruling in that respect.  If it so chooses, UPS may attempt to impeach Plaintiff on the basis of inconsistencies appearing in his prior deposition testimony.

Judge Greenaway did not rule, however, on the application of the continuing violation doctrine to Plaintiff's allegations of discriminatory comments made in the 1980s and 1990s. UPS challenges the admissibility of Plaintiff's evidence about these older instances of harassment on the grounds that the evidence is too vague and/or the alleged harassment was too infrequent to constitute a continuing violation.  UPS also argues that the dated instances of alleged harassment are barred by the equitable doctrine of laches, claiming that Plaintiff unreasonably delayed bringing suit on the workplace harassment for nearly 17 years, and that this delay prejudices UPS's ability to defend against Plaintiff's allegations.  Alternatively, UPS argues that the limited probative value and highly prejudicial nature of the older allegations warrant their exclusion under Federal Rule of Evidence 403.  In response, Plaintiff contends that the alleged discriminatory comments were sufficiently frequent and similar to consider all of the

comments part of one continuing violation, that UPS had sufficient notice of the allegations to investigate their merits during discovery, and that UPS waived its laches defense by failing to raise it as part of its motion for summary judgment.

### A. Waiver

As a preliminary matter, the Court rejects Plaintiff's argument that UPS waived its laches defense.  The case on which Plaintiff relies for its waiver argument, *Mancini v. Township of Teaneck*, found that the defendant in that case had waived its laches defense because, other than its Answer, the defendant did not raise the defense at *any point* in the trial-level or appellate proceedings prior to its petition for certification by the New Jersey Supreme Court.  179 N.J. 425, 433–34 (2004).  Two other cases from the New Jersey Supreme Court—both addressing waiver of a statute of limitations defense—demonstrate that a party's failure to raise a defense prior to trial, or even in the pleadings, constitutes waiver.  *Williams v. Bell Telephone Labs. Inc.*, 132 N.J. 109, 118–19 (1993) (finding that "[t]he mere one-time mention of the statute in [respondent's] Answer . . . should not serve to preserve that otherwise-unasserted defense through the entire three-and-one-half-year span of the litigation, through preparation for and conduct of a protracted trial, and into a post-verdict submission"); *Fees v. Trow*, 105 N.J. 330, 335 (1987) (deeming statute of limitations defense waived where defendant did not raise it in her pleadings, motion for summary judgment, or any other stage of the proceedings).  But none of these cases deal with a defense raised in the pleadings and asserted via a pre-trial motion.

Here, UPS asserted the affirmative defense of laches in its Answer, consistent with Federal Rule of Civil Procedure 8(c).  The Court is aware of no requirement under either the Federal Rules of Civil Procedure or the New Jersey Rules of Court requiring UPS to raise its

laches defense in its motion for summary judgment, as opposed to a timely pretrial motion.  *See* Fed. R. Civ. P. 12(h); R. 4:6-2, 4:6-7.  Accordingly, the Court concludes that UPS did not waive its laches defense.

### B.  *Continuing Violation Doctrine & Laches*

The continuing violation doctrine is an equitable doctrine applicable to hostile work environment claims that allows for the inclusion of evidence concerning harassment that would otherwise be barred by the statute of limitations, so long as the alleged instances of harassment were not individually actionable.  *See, e.g.*, *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 18–23 (2002).  Unlike discrete discriminatory acts affecting the conditions of employment, such as termination, demotion, and denial of promotion, which are individually actionable under the NJLAD, hostile work environment claims "[are] comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 20.  By allowing evidence of discriminatory acts that would otherwise be barred by the statute of limitations, the continuing violation doctrine reflects the inequity that occurs in certain circumstances when the plaintiff only realizes that he has been a victim of unlawful discrimination "with the benefit of hindsight, after numerous discriminatory acts." *Hall v. St. Joseph's Hosp.*, 343 N.J. Super. 88, 103 (App. Div. 2001).  However, this rationale for the continuing violations doctrine also serves to limit its application.  Courts in New Jersey have recognized that, where "[the] plaintiff knew, or with the exercise of reasonable diligence should have known, that each act was discriminatory, the plaintiff 'may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.'" *Id.* (quoting *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993)).

10

To establish a continuing violation under the NJLAD, "a plaintiff must show that (1) at least one allegedly discriminatory act occurred within the filing period and (2) the discrimination is 'more than the occurrence of isolated or sporadic acts of intentional discrimination' [but] is instead a continuing pattern of discrimination." *Alexander v. Seton Hall Univ.*, 410 N.J. Super. 574, 580 (App. Div. 2009). Once a plaintiff has met these requirements, he may recover for damages incurred as a result of the entire continuing violation. In determining the extent of the continuing violation, New Jersey courts consider three factors: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence— whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Id.* at 580–81.

The Court notes that many similar considerations apply to the equitable doctrine of laches, which in this context serves the opposite function of the continuing violations doctrine by excluding dated evidence of discrimination where the plaintiff unreasonably delayed bringing suit for the discriminatory acts. The New Jersey Supreme Court has expressly recognized the availability of a laches defense to NJLAD hostile work environment claims, *see, e.g.*, *Shepherd*, 174 N.J. at 22–23, and courts in New Jersey have described laches as "the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done," *see Lavin v. Bd. of Educ. of Hackensack*, 90 N.J. 145, 151 (1982). To establish a defense of laches, a defendant must present evidence that (1) the plaintiff's delay in bringing a particular claim was unreasonable and demonstrates a lack of diligence, and (2) that defendant has been prejudiced by plaintiff's delay. *Mancini v. Twp. of*

11

*Teaneck*, 179 N.J. at 431 (quoting *Morgan*, 536 U.S. at 121–22).  Although a victim's knowledge of discrimination constituting a hostile work environment does not trigger the statute of limitations for such claim, the New Jersey Supreme Court in *Shepherd* explained that such knowledge would be a relevant consideration in the context of the employer's laches defense. 174 N.J. at 22.  The *Lavin* court further explained that "[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs" in determining the applicability of laches.  90 N.J. at 152.  The *Lavin* court further explained that "[t]he length of the delay alone" may warrant laches.  *Id.*

Cognizant of these guiding principles, the Court notes that Plaintiff alleges perpetual discriminatory comments, some occurring as frequently as on a daily basis, creating a hostile work environment since the late 1980s until he stopped working at UPS in 2005.  In response to UPS's argument that there were gaps in the harassing behavior relied on by Plaintiff, Plaintiff's opposition brief lists a series of racially offensive comments, and reports of the same, that occurred while he was working for UPS.  (*See* Pl.'s Br. at 9–14.)  Many of these instances involve particular workers' use of racial slurs to deride Plaintiff, as well as black and Hispanic co-workers, over multiple-year timespans, and others refer to various managers and supervisors that were advised of a hostile work environment at UPS during different multiple-year timespans. Over this more-than-fifteen-year period, the alleged comments overheard by Plaintiff and/or reported to supervisors included racial slurs, comments suggesting that black and Hispanic employees were lazy and/or dumb, a comment that Plaintiff "looked good in a cage," and a comment comparing Plaintiff to a character from a popular science fiction movie.  The Court notes that many of these alleged comments occurred at some time in the 1990s.  From the

Court's review of Plaintiff's proffer, the only alleged occurrences that Plaintiff has identified by a particular year, as opposed to a range of years, are (1) a racial slur directed at Plaintiff by Frank Black in 2004, (2) Plaintiff reporting discrimination to Laszlo Pribelszy in 2003, (3) a report of discrimination by or to supervisor Jackie King in 2002, and (4) racial jokes and comments witnessed by supervisor Symanese Julian in 2002 and Jackie Gonzales in 2000.

The Court agrees with UPS that laches counsels against the inclusion of the older allegations of harassment, because Plaintiff unreasonably delayed bringing suit on this conduct, and this delay prejudices UPS's ability to defend against these allegations.  The Third Circuit has recognized that, for purposes of laches defenses to actions in equity, "the defendant enjoys the benefit of a presumption of inexcusable delay and prejudice" where "[the] statutory limitations period that would bar legal relief has expired."  *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984).  "In that case, the burden shifts to the plaintiff to justify its delay and negate prejudice."  *Id.*  Here, Plaintiff offers no explanation for why he endured more than fifteen years of perpetual racially discriminatory remarks before bringing suit.  Nor can Plaintiff assert that he was not aware of the need to assert his rights with regard to these discriminatory acts until he filed his Complaint in 2006, because Plaintiff's previously dismissed non-promotion claim alleged that he was denied promotion on the basis of race as early as 2001.

Furthermore, Plaintiff's unique circumstances indicate that he should have known of the actionable nature of the discrimination well prior to the limitations period.  During his deposition, Plaintiff admitted that he had volunteered as a police officer since 1998, that he received his college degree in criminal justice in 2000, that his wife has been a Bergen County assistant prosecutor approximately since 2000, and that, at some point in the 1990s, he was

13

instructed by UPS to report instances of discrimination.  (*See* Pl.'s Dep. at 48–52, 90–92.)  Given

Plaintiff's exposure to law enforcement practices and UPS's anti-harassment policy, in addition

to the alleged non-promotions in 2001 and 2004 and the perpetual onslaught of harassment he

alleges occurred between the late 1980s and 2004, the Court cannot accept that Plaintiff was not

aware of the need to assert his rights under the NJLAD until the final alleged discriminatory

remarks were made in 2004.

As the Court noted above, a plaintiff may not bide his time collecting a series of allegedly

discriminatory acts in the hopes of suing on behalf of all such acts within the limitations period

applicable to the last act.  *Hall*, 343 N.J. Super. at 103; *Moskowitz*, 5 F.3d at 282.  It appears that

Plaintiff has done just this.

Although one may presume prejudice pursuant to the Third Circuit's rule in *Great*

*Atlantic & Pacific Tea Co.*, 735 F.2d at 80, the Court is satisfied that Plaintiff's unreasonable

delay in bringing suit actually does prejudice UPS's ability to defend against the older

allegations.  Many of the allegations of discriminatory comments made by the dozens of

witnesses identified by Plaintiff were vague, in that the witnesses to the discriminatory comments

could not remember the exact comments, to whom the comments were directed, and in what year

they were made.  Naturally, a witness's recollection of events declines with the passage of time.

In assessing the validity of Plaintiff's NJLAD hostile work environment claim, the jury in this

case must carefully consider the context of the alleged discriminatory comments, their frequency,

and the overall working environment, to determine, among other things, if a reasonable person of

Plaintiff's racial and ethnic heritage would consider the discriminatory conduct "sufficiently

severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or

offensive working environment." *See Lehmann*, 132 N.J. at 603.  The vague and diminished

quality of Plaintiff's stale evidence hinders the jury's ability to make this determination and

inures to the detriment of UPS, who must defend against these allegations.

Having determined that laches warrants excluding the more dated allegations of

discrimination supporting Plaintiff's hostile work environment claim, the Court is left with the

question of where to draw the line.  Based on the Court's review of the record, the Court

concludes that all evidence of discriminatory comments prior to 2004 that Plaintiff intends to

present to support his hostile work environment claim should be excluded.  The Court's decision

is guided by the NJLAD's two-year statute of limitations, Plaintiff's allegations of other discrete

acts of discrimination, and Plaintiff's delay of more than 15 years in bringing suit on these acts.

The Court notes that 2004 appears to be the beginning of the statutory time period for Plaintiff's

claim, in the absence of the continuing violation doctrine, considering that Plaintiff filed his

Complaint in January 2006, and the last alleged discriminatory acts—a non-promotion, and

certain racially discriminatory comments—occurred in 2004.  The Court also notes that placing

the bar in 2004 is reasonable considering that it reflects Plaintiff's failure to bring action on the

2001 non-promotion claim, an event which should have triggered Plaintiff's awareness to act on

the hostile work environment claim, within the statutory period.  Accordingly, this Court finds

that Plaintiff may not present evidence of discriminatory comments creating a hostile work

environment prior to 2004.

The Court notes in passing that it appears UPS objects to Plaintiff's use of the actual

racial slurs and jokes he alleges permeated the work environment, on the ground that they are so

inflammatory that their prejudicial nature will overwhelm their probative nature.  The Court

acknowledges that the harassment alleged in this suit—racial slurs and racially insensitive jokes—is inherently inflammatory, and in other contexts, such evidence could be excluded or "sanitized" prior to introduction at trial.  But in this particular context, where Plaintiff alleges a hostile work environment on the basis of race, the actual instances of harassment and actual language used will be highly probative for the jury's determination of whether the work environment was hostile to persons of Plaintiff's race.  Therefore, Plaintiff will not be so limited in presenting evidence of his work environment, within the parameters set by this Court's rulings on laches and Plaintiff's previously dismissed claims.

### 4. Federal Rule of Evidence 702—Dr. Moti Peleg's Testimony

UPS also challenges the admissibility of Dr. Peleg's expert opinion under Rule 702.  UPS claims that Dr. Peleg's testimony constitutes impermissible net opinion, because Dr. Peleg admitted during his deposition that he was not qualified to render an opinion regarding the medical causation of Plaintiff's health conditions, but his expert reports purport to claim that Plaintiff's adverse health conditions were caused by the stress of his work environment at UPS.  Alternatively, UPS challenges Dr. Peleg's methodology, noting that Dr. Peleg failed to account for Plaintiff's family history of heart disease, high blood pressure, and nervous illness, as well as Plaintiff's consumption of caffeine and smoking habits.  UPS also argues that Dr. Peleg's methodology was flawed because he relied on evidence relating to Plaintiff's time-barred claims in formulating his opinion.  Plaintiff responds that Dr. Peleg, as his treating psychologist, made first-hand observations, consistent with commonly accepted psychotherapy practices, that formed the basis of his opinions.

It appears that it would be appropriate for the Court to schedule a *Daubert* hearing to

address the admissibility of Dr. Peleg as an expert witness.  Accordingly, the Court will defer

ruling on this issue and conduct a *Daubert* hearing.

   *5.  Plaintiff's Audiotapes*

UPS also challenges, in whole and in part, the admissibility of audiotapes recorded by

Plaintiff.  It appears that Plaintiff used these tapes covertly to record conversations he had with

work colleagues at UPS.  UPS argues that the tapes are of poor quality, and that some of the

conversations are inaudible.  UPS also challenges the admissibility of certain statements made on

the tapes.

Plaintiff concedes that a Rule 104 hearing will be needed to assess the admissibility of

portions of the tapes, and the Court agrees.  Because the audio quality of the tapes is suspect, the

Court will require Plaintiff, as the party producing the evidence, to provide certified transcripts of

any portion of the tape it seeks to use at trial for purposes of the hearing.  The Court will defer

ruling pending a 104 hearing.

   *6.  Privileged Conversations Between Plaintiff's Counsel and a Prospective Client*
   *(Godfrey Payne)*

UPS next challenges certain testimony given by Plaintiff's witness Godfrey Payne,

because it concerned privileged information deriving from a consultation Mr. Payne had, as a

potential client, with Plaintiff's counsel Michael Mark.  UPS argues that Mr. Payne did not give

informed consent for the disclosure of this information because he was apprised of the privilege

for the first time by Mr. Mark during his deposition and not advised of the ramifications of

waiving the attorney-client privilege.  The Court agrees that Mr. Mark's conduct during the

deposition was improper in that he did not give fair notice to Mr. Payne of the ramifications of

waiving the attorney-client privilege, and the Court agrees that Mr. Payne's testimony regarding conversations he had with Mr. Mark during their consultation should be excluded.  However, after reviewing the information revealed in Mr. Payne's consultation with Mr. Mark, the Court notes that the subject matter of their conversations—discriminatory comments made in the late 1980s and early 1990s—is likewise barred by this Court's ruling with regard to laches. Accordingly, the Court will not allow Mr. Payne's testimony of privileged conversations he had with Mr. Mark.

    *7.  Hearsay Statements*

The Court notes that its laches ruling barring evidence of pre-2004 harassment obviates UPS's request to exclude certain hearsay statements concerning racially discriminatory comments made or heard in the 1990s.  The Court will reserve judgment on additional hearsay concerns pending contemporaneous objections during trial.

### *Conclusion*

To summarize the Court's rulings today, Plaintiff will not be allowed to present evidence relating to the following:

    i)      previously dismissed claims for disability-based harassment, discriminatory pay raises, and the 2001 denial of a promotion;

    ii)    harassment creating a hostile work environment that occurred prior to 2004;

    iii)   evidence of other types of harassment at UPS, such as gender-based harassment, or race-based harassment of persons of races, nationalities, and ethnicities other than Plaintiff's Hispanic and black ancestry; or

     iv)     Mr. Payne's testimony of privileged conversations he had with Mr. Mark during a consultation as a potential client.

Plaintiff will be allowed to introduce evidence of derogatory comments and slurs about African-Americans made to him and in his presence to support his hostile work environment claim, subject to these limitations.  The Court will schedule the aforementioned *Daubert* and Rule 104 hearings in due course.  An appropriate form of Order accompanies this Memorandum Opinion.

Dated: May 17, 2010

                                    /s/ Garrett E. Brown, Jr.
                                 GARRETT E. BROWN, JR., U.S.D.J.